being so provided in article 1137. See, also, McKinney v. State, 8 Tex. App. 626; Hill v. State, 11 Tex. App. 456; Neyland v. State, 13 Tex. App. 536; Childers v. State, 33 Tex. Cr. R. 509, 27 S. W. 133; Eggleston v. State, 59 Tex. Cr. R. 542, 128 S. W. 1105.

There being no issue of manslaughter in the case, the complaints of the charge of the court on murder in the second degree present no error; appellant being assessed the lowest penalty for that offense. There are in the record no exceptions to the introduction or rejection of testimony, and no bill to the remarks of the county attorney complained of in the motion for new trial. If the county attorney used such remarks, it would be necessary to verify that part by a bill of exceptions before we would be authorized to review it.

The judgment is affirmed.

### On Motion for Rehearing.

At a former day of this court this case was affirmed, and appellant has filed his motion for a rehearing, restating many of his former assignments, and in addition thereto insisting that this cause should now be reversed, because the act of the Thirty-Third Legislature made all killings with malice aforethought murder, without making different degrees of murder. He insists that that act repealed murder in the second degree, and that the repealing statute substituted no other penalty for the offense, which was heretofore designated murder in the second degree. This opinion will be confined to a discussion of this last proposition, as all the others were thoroughly reviewed in the original opinion.

Prior to the act of the Thirty-Third Legislature (page 238) relating to murder, the law provided that "every person of sound memory and discretion who, with malice aforethought, shall unlawfully kill any reasonable creature in being in this state shall be guilty of murder," and following this law were articles which defined murder in the first degree and murder in the second degree, and which were repealed by the act of the Thirty-Third Legislature referred to, and which were substituted for those articles.

[2] The new act above mentioned, passed by the Thirty-Third Legislature, repeals articles 1140, 1141, 1142, 1144, Revised Penal Code of the state of Texas 1911, and inserts in lieu thereof articles 1140 and 1141, which read as follows:

Art. 1140. "Every person with sound memory and discretion who, with malice aforethought shall unlawfully kill any person within this state shall be guilty of murder. Murder is distinguished from every other species of homicide by the absence of circumstances which reduce the offense to negligent homicide, or manslaughter, or which excuse or justify the homicide."

Art. 1141. "The punishment for murder shall be death or confinement in the penitentiary for life or for a term of years not less than five.

"All laws and parts of laws in conflict herewith are hereby repealed.

"The fact that the present law defining murder divides the same into two degrees, to wit: first degree murder and second degree murder, and the fact that such definitions of murder or divisions of murder are creating complications in the trial of those charged with murder, creates an emergency," etc.

It is clear from the whole act referred to, and especially from the third section or paragraph thereof, that it was not the intention or purpose of the Legislature to repeal the law constituting what has heretofore been known as second degree murder, without, at the same time, substituting another penalty for that offense. The third section of this act clearly shows what was intended to be done by the Legislature—simply to change the name of murder in the second degree to murder, and fix the punishment for such an offense. It is true that, if this cause were reversed, and sent back to the lower court for another trial, appellant would have the right to demand to be tried under the penalty fixed by the old law, as the penalty there fixed was a less penalty for the offense committed by him than the one now fixed by the act of the Thirty-Third Legislature; but this fact would not entitle him to have his case reversed by this court, nor dismissed by the trial court. See articles 15, 16, 17, 19, Revised Penal Code 1911. Also, Roberts v. State, 17 Tex. App. 148; Gill v. State, 30 Tex. 514; Ezzell v. State, 29 Tex. App. 521, 16 S. W. 782; Walker v. State, 7 Tex. App. 245, 32 Am. Rep. 595; Simms v. State, 8 Tex. App. 230; Myers v. State, 8 Tex. App. 321.

---

### ROSEN v. PHELPS.

(Court of Civil Appeals of Texas. Ft. Worth. July 5, 1913. Rehearing Denied Oct. 18, 1913.)

1. FRAUDS, STATUTE OF (§ 110*) — CONTRACT FOR SALE OF LAND—SUFFICIENCY.

The written agreement for the sale or exchange of land required by Rev. St. 1911, art. 3965, requiring such contracts to be in writing, must contain the essential terms of a contract, such as its subject-matter, expressed with such certainty that it may be understood, without parol evidence to show the intention of the parties.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 225–236; Dec. Dig. § 110.*]

2. SPECIFIC PERFORMANCE (§ 29*)—SUFFICIENCY OF CONTRACT—IDENTIFICATION OF SUBJECT-MATTER.

A contract agreeing to convey "a certain three thousand acres in B. county, Texas," without designating the owner or any particular locality or natural objects fixing its location, or referring to any writing doing so, and

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

also certain lots described by merely giving the lot and block number and price, was too indefinite in describing the land to permit specific performance.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 69–82; Dec. Dig. § 29.*]

Appeal from District Court, Bosque County; O. L. Lockett, Judge.

Action by Sam Rosen against M. Phelps. From a judgment for defendant, plaintiff appeals. Affirmed.

C. M. Templeton, of Ft. Worth, for appellant. S. C. Padelford, of Cleburne, and Cureton & Cureton, of Meridian, for appellee.

CONNER, C. J. Appellant sought a specific performance of the following written contract:

"The State of Texas, County of Tarrant.

"This agreement entered into by and between Sam Rosen of the county of Tarrant, state of Texas, hereinafter known as party of the first part, and M. Phelps, of Bosque county, Texas, hereinafter designated as party of the second part, Witnesseth:

"Party of the second part agrees to convey to party of the first part, clear of all incumbrances a certain three thousand acres in Bosque county, Texas. Said party of the second part is to furnish abstract showing perfect title to said land.

"In consideration of which party of the first part agrees to convey by warranty deed to party of the second part, the following parcels, to wit:

| | |
|---|---|
| Lots 13, 14, block 18 | $ 2,200 00 |
| Lots 15, 16, block 18 | 2,200 00 |
| Lots 17, 18, block 18 | 2,200 00 |
| Lots 19, 20, block 18 | 2,200 00 |
| Lots 22, 23, block 18 | 2,200 00 |
| Lot 13, block 35 | 2,200 00 |
| Lots 14, 15, 16, block 35 | 1,200 00 |
| Lot 20, block 35 | 1,250 00 |
| Lots 19, 21, block 35 | 800 00 |
| Lot 19, block 41 | 3,000 00 |
| Lots 17, 18, block 41 | 800 00 |
| Lot 20, block 41 | 2,000 00 |
| Lots 21, 22, block 41 | 800 00 |
| Lots 16, 23, 60, block 40 | 3,200 00 |
| Lots 13, 14, 15, block 40 | 750 00 |
| Lots 5, 6, 7, 8, block 33 | 1,600 00 |
| Lots 9 to 16, block 33 | 3,200 00 |
| Lots 3, 4, block 38 | 800 00 |
| Lots 1, 2, block 1 | 3,400 00 |
| Lots 3, 4, block 8 | 2,900 00 |
| Lots 15, 16, block 32 | 800 00 |
| Lots 13, 14, 15, block 31 | 1,200 00 |
| Lots 13 to 18, 20, 21, block 34 | 3,200 00 |
| | $43,900 00 |

"All of said parcels to be clear of incumbrances.

"It is agreed and understood that the party of the second part is entitled to 1912 crop and also to the use of the pasture to December 31, 1912.

"It is expressly agreed and understood, that this agreement is subject to the examination of the land by the party of the first part. In the event that said party of the first part is not satisfied with said land, then this agreement shall be null and void and not binding.

"[Signed] Sam Rosen.
"M. Phelps.
"Witness: G. H. Williams."

[1] When offered in evidence the contract was excluded on the ground that it was in violation of the statute of frauds; "there being no description of the property and land attempted to be described in the plaintiff's petition." The statute referred to (Rev. St. 1911, art. 3965) requires contracts for the sale or exchange of lands to be in writing; and, as said by this court in the case of Cusenbary v. Latimer, 28 Tex. Civ. App. 217, 67 S. W. 187: "No rule seems better settled than that before a court of equity will decree the specific performance of a contract for the sale of land, the written agreement required by the statute must contain the essential terms of a contract expressed with such certainty that it may be understood without recourse to parol evidence to show the intention of the parties, and that no part of such contract is more essential than that which identifies the subject-matter of the agreement" (citing Jones v. Carver, 59 Tex. 295; Patton v. Rucker, 29 Tex. 402; Mitchell v. Ireland, 54 Tex. 301; Mathews v. Jarrett, 20 W. Va. 415; Hollenbeck v. Prior, 5 Dak. 298, 40 N. W. 349; Strang v. Railway [C. C.] 93 Fed. 72; 2 Dev. on Deeds, § 1010).

[2] It seems manifest that the contract under consideration within itself fails to give any such description of the lands therein referred to as is sufficient to identify them with reasonable certainty, and thus enable a court of equity to decree title in the plaintiff to the lands described in his petition, or to any definite or certain tract of land in Bosque county aggregating 3,000 acres, or in turn to vest in the defendant lots and blocks in any specified city or other locality of Tarrant county. The contract is that appellee will convey "a certain three thousand acres in Bosque county, Texas," without designating the owner, any particular locality, landmark, natural object, or other thing that fixes location, and makes no reference to any other writing by which the land can be identified. It is likewise so of the lots and blocks appellant was to convey to appellee. Appellant insists, however, that the description in the contract may be aided by the circumstances alleged in his petition. Briefly stated, plaintiff alleged that the lots and blocks referred to in the contract were lots and blocks in the Rosen Heights addition to the city of North Ft. Worth; that prior to the execution of the contract plaintiff and defendant went upon the ground and marked and checked off upon the plat of said addition the lots and blocks specified in the contract, and that the lots

so marked and checked and described in the contract were the specific ones to be exchanged for defendant's 3,000 acres of land in Bosque county; that the 3,000 acres of land referred to in the contract were 3,000 acres of land near the town of Morgan in Bosque county owned by the defendant; that after the execution of the contract they had been inspected by the plaintiff and accepted; that at the time of or prior to the execution of the contract the agent of defendant had delivered to the plaintiff a printed circular particularly describing the situation of defendant's land, its divisions into pastures, the number of houses, barns, lots, windmills, and number of acres in cultivation, etc., and it was alleged that the land so described in said circular was the identical land exhibited to plaintiff by the defendant at the time of the inspection referred to and described in the petition; that said 3,000 acres were the only 3,000 acres owned by the defendant in Bosque county; that both plaintiff and defendant well knew the particular property each contracted to convey to the other; that no other property was in the contemplation of the parties or considered by them.

We are of the opinion, however, that the contract under consideration cannot be so enlarged. In this respect we are unable to distinguish the case from that of Penn v. Texas Yellow Pine Lbr. Co., 35 Tex. Civ. App. 181, 79 S. W. 842, by the Court of Civil Appeals for the First District, in which a writ of error was refused. The contract in that case was to convey "6,100 acres under consideration in Tyler county." It was alleged that the 6,100 acres under consideration were mutually understood between the parties to be the land particularly described in the petition, the title to which stood in the name of the defendant, and were the only lands ever considered by the parties in the negotiations; that the lands under consideration had been designated upon a map of Tyler county in each instance, stating the original survey; the number of acres owned therein by the defendant which it was desired to sell to the plaintiff, its location in said survey, each tract being pointed out separately and particularly; that prior to the execution of the contract the defendant had furnished the plaintiff a written statement, giving the name of each survey, and the number of acres in each survey, which the defendant desired to sell and the plaintiff wished to purchase, and that in each instance and on every occasion defendant designated to the plaintiff the identical lands described in the petition and none other; that after the making of the contract the defendant had furnished the plaintiff abstracts of title of the particular lands described in the petition, etc. But the court sustained exceptions to these allegations, stating that: "We think the description of the land contained in the contract is wholly insufficient to identify the land attempted to be described, and the contract furnishes no means by which said land can be identified with reasonable certainty." This case appears to be decisive of the case before us, and is easily distinguishable from those cited in behalf of appellant, such as Macmanus v. Orkney, 91 Tex. 27, 40 S. W. 715; Eustis v. City of Henrietta, 90 Tex. 468, 39 S. W. 567; Hermann v. Likens, 90 Tex. 448, 39 S. W. 282; Pierson v. Sanger Bros., 93 Tex. 160, 53 S. W. 1012, and other cases. We think it will be found that in these cases the contract itself furnished some means by which the land could be identified, but not so as already stated in the case before us. It is true appellant alleges that a printed circular was exhibited by an agent of appellees, which would be sufficient; but, as will be observed, the contract under consideration makes no reference whatever to such printed circular.

Appellee cites numerous cases that we think fully support the conclusion indicated by us. Among others is the case of O'Donnell v. Leeman, 43 Me. 158, 69 Am. Dec. 54, where it is held that no action can be maintained on a memorandum of an auctioneer of the sale of real estate unless it tells, or by reference to some other paper it contains the whole agreement, and the handbills and newspaper notices published at the time of the sale are not admissible; the contract containing no reference to them. Again in the case of Boydell v. Drummon, 11 East, 142–160, it was held that one could not refer to printed prospectuses which contained the terms of the contract, and which were delivered at the time of the making of the contract, in order to aid it, when the same was not referred to or in any way made a part of the contract. In brief, the authorities establish the rule that for a contract to be sufficient within the statute of frauds it must describe, or furnish the means of describing, with reasonable certainty the land constituting the subject-matter of the contract, so that it may be identified without resort to matters purely in parol. See Jones v. Carver, 59 Tex. 295; Johnson v. Granger, 51 Tex. 44; Cusenbary v. Latimer, 28 Tex. Civ. App. 217, 67 S. W. 187; Norris v. Hunt, 51 Tex. 615; Zanderson v. Sullivan, 91 Tex. 503, 44 S. W. 484; Johnson v. Fecht, 94 Mo. App. 605, 68 S. W. 620; Price v. Hays, 144 Ky. 535, 139 S. W. 810; Baldwin v. Kerlin, 46 Ind. 426; Miller v. Campbell, 52 Ind. 125; Taney v. Bachtell, 9 Gill (Md.) 205; Taylor v. Allen, 40 Minn. 433, 42 N. W. 292; Ives v. Armstrong, 5 R. I. 567; Hamilton v. Harvey, 121 Ill. 469, 13 N. E. 210, 2 Am. St. Rep. 118; Craig v. Zelin, 137 Cal. 105, 69 Pac. 853; Sherer v. Trowbridge, 135 Mass. 500; Palmer v. Albee, 50 Iowa, 429; King v. Ruckman, 20 N. J. Eq. 316–360; Wortham v. Stith (Ky.) 66 S. W. 390; Mason v. Small, 130 Mo. App. 249, 109 S. W. 822; Regan v. Milby, 21 Tex. Civ. App. 21, 50 S. W. 587.

We conclude that the court properly ex-

cluded the contract, or at least that its exclusion was harmless; and the judgment is affirmed.