## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

## OCTOBER TERM, 1905.

---

*( Continued from Volume 116.)*

---

JENKINS, Respondent, v. EMMONS, Administrator of
the Estate of ENOCH, Deceased, Appellant.

**St. Louis Court of Appeals, February 27, 1906.**

1. **WITNESSES: Party Dead: Enabling Statute.** The restrictions
   and qualifications to the enabling clause of section 4652, Re-
   vised Statutes of 1899, do not change the common law rule in
   regard to the competency of witnesses, and nowhere make
   them incompetent where at common law they would have been
   competent for any purpose.

2. ———: ———: **Proving Loss of Instrument.** The payor of a
   lost note being dead, the payee, after its contents were es-
   tablished by other witnesses, was a competent witness to
   prove its loss since the death.

3. **PRACTICE: Note: Possession.** Possession of a note by the
   payee until its loss, in the absence of evidence to the contrary,
   was presumptive evidence of ownership.

Appeal from St. Charles Circuit Court.—*Hon. James D.*
*Barnett,* Judge.

AFFIRMED.

117 App—1 (1)

*Theodore C. Bruere* for appellant.

(1) The court erred in permitting the respondent to testify as a witness in her own behalf. She was clearly incompetent to testify under the statutes. R. S. 1899, sec. 4652; Looker v. Davis, 47 Mo. 145; Curd v. Brown, 148 Mo. 95, 49 S. W. 990; Johnston v. Johnston, 173 Mo. 121, 73 S. W. 202; Leeper v. Taylor, 111 Mo. 312, 19 S. W. 955; Wood v. Matthews, 73 Mo. 482; Teats v. Flanders, 118 Mo. 660, 24 S. W. 126; Ring v. Jamison, 66 Mo. 424; Wade v. Hardy, 75 Mo. 394; Callahan v. Riggins, 43 Mo. App. 130. (2) The court erred in giving the instruction requested by respondent. There was no evidence upon which to base said instruction. Said instruction was erroneous. Devlin v. Clark, 31 Mo. 22; Hughes v. Moore, 17 Mo. App. 148.

*Charles J. Daudt* and *Alfred R. Hovey* for respondent.

(1) The testimony given by the plaintiff as to the loss or destruction of the note was legal and admissible. One of the exceptions, even at common law, to the rule that parties were incompetent witnesses, was in the case of proof of the loss or destruction of an instrument sued on. 1 Greenleaf Ev. (9 Ed.), sec. 348, p. 492, sec. 558, p. 733; 30 Am. and Eng. Ency. Law, (2 Ed.), 916; 29 Am. and Eng. Ency. Law, (1 Ed.), 548; Taylor v. Riggs, 1 Peters, 591; Lane v. Moore, 14 Howard 253; Parker v. Edwards, 85 Ala. 246; Milan's Exr. v. Milan, 60 Ind. 58; Schlemmer v. Schendorf, 20 Ind. App. 447; Choate v. Huff, 4 Tex. (18 S. W. Rep. 87); Showders v. Harper, 1 Har. (Del. 1832) 444; Mayner v. Lewis, Ga. (1842) 205; Williston v. Williston, 41 Barb. (N. Y.) 635; Porter, Exr. v. Ferguson, 4 Fla. (1851) 102; Ellis v. Ellis, 1 Mo. 220; Gould v. Trowbridge, 32 Mo. 291. (2) The statute making parties competent witnesses and containing certain provisos, in the case of the death of one party to the contract or transaction in issue, leaves the other

party in the same position as to testifying that he was in at common law; if competent then competent now; if incompetent then, incompetent now. Angell v. Hester, 64 Mo. 142; Ring v. Jamison, 66 Mo. 424; Meier v. Thieman, 90 Mo. 442, 2 S. W. 435; Bates v. Forcht, 89 Mo. 121; Samuel v. Bartee, 53 Mo. App. 587; State ex rel. v. Flynn, 66 Mo. App. 373; Kuhn v. Insurance Co., 71 Mo. App. 305; Bagnell v. Bank, 76 Mo. App. 121; Stevens v. Witter, 88 Ia. 636; Milam v. Milan, 60 Ind. 58. But under the express terms of the statute a party is competent as a witness to testify to acts and transactions happening after the grant of letters of administration upon the estate of the deceased other party. Sec. 4652, R. S. 1899; Eyermann v. Piron, 151 Mo. 207, 52 S. W. 229; Wade v. Hardy, 75 Mo. 394.

BLAND, P. J.—The plaintiff procured an allowance for $1,156.50 against the estate of John Enoch, deceased, in the St. Charles Probate Court. The administrator appealed to the circuit court, where, on a trial *de novo* to a jury, she recovered a judgment for $1,225, from which the administrator appealed to this court.

The claim, as presented to the probate court and on which the case was tried, reads as follows:

"The estate of John Enoch, deceased,

"To Amanda F. Jenkins, Dr.

"For the amount of a promissory note executed and delivered by the said John Enoch to the said Amanda F. Jenkins, dated on or about June 12, 1901, due one year after date and bearing interest from date at the rate of six per cent per annum, which note has been lost, misplaced or destroyed, so that the same cannot be produced, which note was for this sum of one thousand dollars. Interest to be added from the date of the note to the date of allowance.

(Signed)

"AMANDA F. JENKINS,
"Per. R. C. Haenssler, Atty."

The claim is duly verified by the affidavit of the claimant.

The evidence shows that John Enoch died in January or February, 1902.

The evidence of Mary J. Bunker, the widowed daughter of plaintiff and a witness for her, shows that while she and her mother were summering at Lake View, Michigan, in 1901, the plaintiff, on the written request of Enoch, expressed to him, at Kansas City, Missouri, one thousand dollars in currency, and Enoch acknowledged the receipt of the money by letter and inclosed his promissory note for one thousand dollars, dated June 12, 1901, payable to plaintiff, due one year after date and bearing interest at the rate of six per cent per annum. Witness testified that she read the letter, read the note and afterwards, on one or two occasions, saw the note in the possession of her mother.

Another of plaintiff's daughters, Mrs. L. J. Gallup, testified that she had seen and read the note, knew the signature of Enoch, and that the note was signed by him, dated June 12, 1901, and was for the sum of one thousand dollars, payable to her mother.

Mrs. Bunker testified that she lived with her mother, and she and her mother had repeatedly hunted for the note, after learning of Enoch's death; had searched her mother's desk where she kept her papers, and searched the premises generally, but had been unable to find the note.

The plaintiff testified that she had the note in her possession after March 26, 1902, the date on which letters of administration were granted. Plaintiff's examination proceeded as follows:

"Q.  (By the Court):  What became of the note? A.  Well, I think I lost it; I certainly lost the note.

"Q.  Do you remember any occasion when you think you lost the note?  A.  Yes, sir; I think I lost it at the time I was going to send it to the administrator.

"Q. When was that? A. It was the latter part of May.

"Q. What makes you think you lost it on that occasion? A. Well, because I had it out and I was preparing to send it to the administrator and when I went to—

"Objection by Mr. Bruere: We object to that; it seems to me the only question is was the note lost; not what she did to the administrator.

"The Court: The objection is sustained as to that.

"Q. Well, the note was lost? A. Yes, sir.

"Q. Now, is that note the one that was mentioned by Mrs. Bunker in her testimony? A. Yes, sir.

"Q. Have you since that time or on that occasion and since made any search for this instrument? A. Yes, sir.

"Q. With what result? A. I have never found it.

"Q. How often have you searched for it? A. Oh, I have searched for it many times.

"Q. Where have you searched for it? A. All through my writing desk and through my house and every place.

"Q. When did you say that was? A. In the latter part of May.

"Q. Where were you living then? A. Clarks Hill.

"Q. Where are you living now? A. I am living in Indianapolis now.

"Q. Have you moved your residence more than once since that time?

"Objection by Mr. Bruere: We object to that, if your honor please.

"The Court: The objection is sustained.

"Q. Have you continued the search for that note, Mrs. Jenkins? A. Yes, sir.

"Q. Up to what time? A. Well, up to the present time I guess; I have always looked for it.

"Q. And have you been able to find it? A. No, sir."

Defendant objected to all the foregoing evidence of plaintiff, on the ground that Enoch being dead, the plaintiff was not a competent witness for any purpose. His objection was overruled and an exception saved to the ruling.

1. Defendant insists that his objection to the competency of the plaintiff as a witness should have been sustained. Section 4652, Revised Statutes 1899, enacts: "No person shall be disqualified as a witness in any civil suit or proceeding at law or in equity, by reason of his interest in the event of the same as a party or otherwise. . . . Provided, that in actions where one of the original parties to the contract or cause of action in issue and on trial is dead, or is shown to the court to be insane, the other party to such contract or cause of action shall not be admitted to testify;" and further provides that where "an executor or administrator is a party, the other party shall not be admitted to testify in his own favor, unless the contract in issue was originally made with a person who is living and competent to testify, except as to such acts and contracts as have been done or made since the probate of the will or the appointment of the administrator." We doubt if the plaintiff comes within any of the exceptions named in the statute and think, if the statute is given a literal construction, she was not a competent witness for any purpose. In some of the cases, it has been held that the statute is in derogation of the common law; in others that the statute should have a liberal construction in order to thoroughly effectuate its purpose (Berlin v. Berlin, 52 Mo. 151); that it should be construed to conform to its spirit rather than its strict letter (Banking House v. Rood, 132 Mo. 256, 33 S. W. 816).

In Meier v. Thieman, 90 Mo. l. c. 442, 2 S. W. 435, it is said: "The substance of the provision is, that if both parties are alive both may testify, but if one be dead

then the common law is in full force as to the competency of the survivor as a witness in his own favor."

Dr. Wharton says: "Much, however, as the statutes may differ in words, they are the same in purpose. That purpose is to provide that when one of the parties to a litigated obligation is silenced by death, the other shall be silenced by law." [1 Whart. Evid., sec. 466.]

In Coughlin v. Haeussler, 50 Mo. l. c. 128, BLISS, J., writing the opinion of the court, said: "As has been so often stated, the object and spirit of the statute is to place parties upon an equality, so that one party shall not be permitted to testify to transactions cognizant to both, when the other can no longer be heard."

In Orr v. Rode, 101 Mo. l. c. 298-9, 13 S. W. 1066, the Supreme Court, through BARCLAY, J., commenting on the statute, said:

"Many years ago this court ruled that the strict letter of the statute, regulating the admissibility of interested testimony where the adverse party is dead, should yield to its reason and spirit which aimed at placing the parties upon an equality. [R. S. 1889, sec. 8918; Coughlin v. Haeussler, 50 Mo. 126.] Since that construction was announced, the statute has been revised and re-enacted without change in the language so construed. We, therefore, accept that view of it as having received legislative approval by such re-enactment and as furnishing a proper rule for our guidance."

This court, in Henry v. Buddecke, 81 Mo. App. l. c. 364-5, said: "The spirit of the statute is not to close the mouth of the surviving party to a contract where the other party is dead under all conditions, and in every circumstance, but to close his mouth, where to permit him to speak would give him an advantage which he would not have were the other party living;" and held that in a suit on a promissory note made by T. to H. and indorsed by B., H., notwithstanding T. was dead, was a competent witness to testify that he stood by and saw B. write his name across the back of the note.

In Ring v. Jamison, 66 Mo. 424, and Wood v. Matthews, 73 Mo. 477, it was held that where one of the parties to a contract in suit is dead, the other is not a competent witness for any purpose whatsoever.   But in Wade v. Hardy, 75 Mo. 394, decided before the amendment allowing a party to a transaction had after the probate of the will or appointment of an administrator of the deceased party, the ruling in these cases was modified and it was held that where an administrator is a party to an action upon a contract made by his intestate, the adverse party will be admitted to testify in his own favor as to matters which have occurred since the appointment of the administrator.   The Wade case is approvingly cited in Leeper v. Taylor, 111 Mo. l. c. 323, 19 S. W. 955; Brown v. Foster, 112 Mo. l. c. 300, 20 S. W. 611; Teats v. Flanders, 118 Mo. l. c. 670, 24 S. W. 126, and in Eyerman v. Piron, 151 Mo. l. c. 115, 52 S. W. 229.

In Curd v. Brown, 148 Mo. l. c. 95, 49 S. W. 990, it is said that the statute leaves a party where he would have been at common law, "incompetent for any purpose, because the other party to the contract was dead."   This case is approvingly cited in Johnston v. Johnston, 173 Mo. l. c. 121, 73 S. W. 202.

In Angell v. Hester, 64 Mo. 142, reviewing the authorities in this and other States having a similar statute, the court held that in any case where at common law a party to a suit could testify, he might still do so, notwithstanding the statute.   This ruling is cited and approved in Ring v. Jamison, 66 Mo. l. c.   429; Bradley v. West, 68 Mo. l. c. 73; Hisaw v. Sigler, 68 Mo. l. c. 450; Meier v. Thieman, Wade v. Hardy, and Curd v. Brown, supra.   The same interpretation was given the statute by this court in Ashbrook v. Letcher, 41 Mo. App. 369, and Fink v. Hey, 42 Mo. App. 295.

The statute does not detract anything from the common law.   It abrogates the common-law rule that parties interested in the result of a litigation are not competent witnesses and enables them, including the parties to the

action, to testify in their own behalf. The proviso containing the restrictions and qualifications to the enabling clause of the statute in nowise changes the common-law rule in regard to the competency of witnesses, and nowhere makes them incompetent where at common law they would have been competent for any purpose. [Authorities, supra]. Therefore, if the plaintiff was a competent witness, at common law, to testify to the loss of the note, she is not incompetent under the statute. For the reason that it sometimes happens that the very nature of the case is such that no proof except that of the party himself can be had, from very necessity the common-law rule of exclusion is relaxed; and one class of such exception to the common-law rule, that parties are not competent to testify in their own behalf, is where a deed or other material written instrument of evidence is lost; its contents having been first proved, the party's own oath is received to establish, not the contents of the lost instrument but the fact and circumstances of its loss. [Greenleaf on Evid. (15 Ed.), sec. 349; Taylor v. Riggs, 1 Peters 591; DeLane v. Moore, 14 Howard 1. c. 265; Shrowders v. Harper, 1 Harr. (Del.) 444; Ellis v. Ellis, 1 Mo. (republication) 157.]

In Gould v. Trowbridge, 32 Mo. 1. c. 292-3, the Supreme Court, speaking of the exceptions, said: "That a party to a suit is competent to prove the loss of a paper by way of laying the foundation for the introduction of secondary evidence of its contents, provided it was lost out of his own custody, is so well settled by the practice of the courts as to admit of no question."

A case on all-fours with the one in hand is Milam's Executor v. Milam, 60 Ind. 58, where it was held that in an action against the estate of a deceased debtor, on a lost promissory note, after evidence by others had been given of the existence and contents of such note and the plaintiff's possession thereof, plaintiff was a competent witness to prove the loss of the note. A like ruling was made in Parker v. Edwards, 85 Ala. 246. On the forego-

ing authorities, we think plaintiff was a competent witness to prove the loss of the note.

2. It is contended that the court erred in giving the following instruction for plaintiff, for the reason there was no evidence that the note bore six per cent interest, and no evidence that the note was the property of the plaintiff at the time of its loss:

"1. The jury are instructed that if they find from the evidence that John Enoch made, executed and delivered to the plaintiff, Amanda F. Jenkins, his promissory note, dated June 12, 1901, whereby he promised to pay to her the sum of one thousand dollars, one year after date, with interest thereon at the rate of six per centum per annum from date, then you will find for the plaintiff in the said sum of one thousand dollars, together with interest thereon at the rate of six per centum per annum from June 12, 1901, until the present date, although said note was not produced in court or offered in evidence, provided that you find from the evidence that said note has been lost or destroyed, and was at the time of its loss or destruction the property of the plaintiff and was then unpaid."

Mrs. Bunker testified that she read the note and that it was for one thousand dollars at six per cent interest. The evidence shows that the plaintiff was the payee named in the note; that it was delivered to her and remained in her possession until it was lost, and there is not a ray of evidence that she ever parted with her possession or ownership of the note, therefore, there is no merit whatever in the objection to the instruction.

3. The defendant discusses in his brief the effect of a mass of affidavits, etc., that were never offered in evidence, never called to the attention of the trial court, and not even filed therein. They seem to have been procured since the appeal was taken and were filed for the first time in this court. On what theory of appellate practice the defendant expects to have these papers considered here is beyond conjecture. They form no part of

the record and are therefore foreign to every issue raised by the record and cannot be considered on this appeal for any purpose.

No reversible error appearing, the judgment is affirmed.